This is an appeal by plaintiff from the grant of summary judgment for the defendants in an action based upon negligence, wanton conduct, and breach of an implied contract. We affirm.
The action grew out of injuries sustained by plaintiff when, as a visitor at Tannehill State Park, he dived into Mill Creek, a creek located within the park. Named as defendants were the Tannehill Furnace and Foundry Commission, the sixteen members of the commission, and the park superintendent, Edward Nelson. The commission members were sued individually, as commission members, and as members of the board of Tannehill Historical State Park. Nelson was sued as park superintendent. Plaintiff's complaint alleged that the defendants negligently or wantonly failed to provide a reasonably safe place for visitors of the park to swim, and failed to warn visitors of hidden objects submerged in the creek. Plaintiff also alleged the breach of an implied contract to furnish reasonably safe conditions in the park, the contract being founded on an admission fee paid by plaintiff.
The defendants filed a motion to dismiss based upon the Constitution of 1901, Art. I, § 14, which provides: "That the State of Alabama shall never be made a defendant in any court of law or equity."
Following discovery and oral arguments in the court below, defendants furnished the affidavits of Nelson and Dan Kilgo, commission chairman. Defendants also requested that the trial court treat their motion to dismiss as a motion for summary judgment. In due course, summary judgment was granted in favor of all defendants and this appeal ensued.
Plaintiff has presented several issues for our consideration, all relating to the basic question of immunity from liability. In sum, plaintiff questions the defendants' immunity under § 14, under the decisions of this Court in DeStafney v.University of Alabama, 413 So.2d 391 (Ala. 1981), and Bell v.Chisom, 421 So.2d 1239 (Ala. 1981); under an implied contract theory; and under the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. We shall review these issues seriatim.
It will be helpful to examine the statutes creating the Tannehill Furnace and Foundry Commission, which are found in Code of 1975, §§ 41-9-320 through -342. Section 41-9-320
explains the commission's purpose:
 "(a) There is hereby created the Tannehill furnace and foundry commission to establish, operate and maintain as a state park or historic site the land and buildings in the county of Tuscaloosa *Page 1215 
where one of the state's early ironworks, known as the Tannehill furnace and foundry, was located.
 "(b) The purpose of the commission shall be to preserve, restore, maintain and promote as a state park or historic site the land and relics of the Tannehill furnace and, in recognition of the important part played by the iron and steel industry in the development of this state, to exhibit this old furnace as an example of the process of making iron in this state's early days."
Section 41-9-321 provides for the appointment of sixteen commission members. Section 41-9-322 provides that no member of the commission shall receive any pay for his services, but provision is made for repayment of expenses by the commission. Section 41-9-323 provides for meetings, organization, and procedures.
Section 41-9-324 constitutes the commission a body corporate:
 "The commission shall constitute a body corporate and shall have, in addition to those set forth specifically in this division, all powers necessary or convenient to effect the purposes for which it has been established under and by the terms of this division, together with all powers incidental thereto or necessary to the discharge of its said powers and duties."
And § 41-9-325 designates the commission as a state agency:
 "The commission shall be a state agency and shall have exclusive control over the Tannehill furnace and foundry and the area appurtenant thereto, the memorial park established under this division, all improvements and exhibits located thereon and any additions constructed, created, leased, acquired or erected in connection therewith."
Section 41-9-326 (a) authorizes the commission to acquire the "old Tannehill furnace" property owned by the University of Alabama, whose board of trustees was itself authorized "to lease or to deed . . . such lands and appurtenances thereto to the commission." The commission, under this subsection:
 "is further authorized to lease, accept as a gift or loan or otherwise acquire any other property, real or personal, including gifts or bequests of money or other things of value to be used in fulfilling the purpose for which it is established or for any auxiliary purpose incidental or appropriate thereto.
 "(b) The commission is also authorized to borrow money and issue revenue bonds in evidence thereof, but no such bonds shall be general obligations of the state of Alabama or any agency or any political subdivision thereof. Nor shall such commission pledge to the payment of any such loans the land, buildings, exhibits or other appurtenances thereto. It may, however, pledge to the repayment thereof the proceeds derived from admission fees or charges or other fees or charges made in connection with such park or historical site."
Section 41-9-327 provides for operation of the park; § 41-9-328
allows county governing bodies to appropriate unpledged public funds to the commission's use. Section 41-9-329 grants tax exempt status to the commission, its properties, income, leases, agreements, bonds and bond income. And in § 41-9-330
(a) all full-time employees of the commission "shall be treated as state employees for the purpose of participating in any insurance programs provided for state employees." In subsection (b), the commission is empowered to pay employer's contributions out of appropriated or other available funds, and authorized to deduct employees' contributions for such programs.
Plaintiff's first argument is based upon the "separate entity doctrine." Applying that doctrine, plaintiff asserts that these statutory provisions created neither a State agency nor a State subdivision, but a public corporation, a separate entity from the State of Alabama. If this is a tenable position, it follows that the commission is not "the State" under the provisions of § 14 of the Constitution. *Page 1216 
Admittedly, there is some language describing the commission as "a body corporate," § 41-9-324. Facially, this language would tend to establish the plaintiff's position. On the other hand, another section, § 41-9-325, describes the commission as "a state agency," thus lending credence to the defendants' position. Resolution of the issue cannot turn on the use of labels. Armory Commission of Alabama v. Staudt, 388 So.2d 991
(Ala. 1980). Indeed,
 "[w]hether a lawsuit against a body created by legislative enactment is a suit against the state depends on the character of power delegated to the body, the relation of the body to the state, and the nature of the function performed by the body. . . ." Armory Commission of Alabama, 388 So.2d at 993.
We find nothing in either Curtis v. Alabama Elk RiverDevelopment Agency, Inc., 372 So.2d 353 (Ala.Civ.App. 1979);Knight v. West Alabama Environmental Improvement Authority,287 Ala. 15, 246 So.2d 903 (1971); or Edmonson v. State IndustrialDevelopment Authority, 279 Ala. 206, 184 So.2d 115 (1966), requiring a holding that this commission is a separate entity from the State of Alabama.
Armory Commission of Alabama, supra, followed the analysis utilized in State Docks Commission v. Barnes, 225 Ala. 403,143 So. 581 (1932), to determine whether the instrumentality in question was an arm of the State. Interestingly enough, inBarnes it was conceded that the State docks operation was a business undertaking. Nevertheless, other factors pointed to a strong nexus with the State itself, e.g., the use by the commission of State-owned land, and operation by the commission as agent for the State and not independently. In ArmoryCommission of Alabama, supra, it was noted that State appropriations flowed to the commission from the State Military Department, and that the governor was authorized by legislation to use military appropriations to pay the commission's expenses. In both of these cases, moreover, the funds of each were found to be directly affected by a lawsuit because subjected to liability, and thus a lawsuit against either was tantamount to a lawsuit against the State itself.
Considering the legislative language of the various sections together, we have concluded, likewise, that the Tannehill commission was created as an arm of the State of Alabama, existing to carry forth an important function of our State government: holding, maintaining, and preserving state lands of historical significance for the benefit of our citizens. This governmental function is recognized by the legislative language which repeatedly emphasizes the commission's purpose to preserve the Tannehill lands as an exhibit of the state's iron- and steel-making heritage. Violations of the commission's rules are made misdemeanors. The commissioners are vested with police power to make arrests, prefer charges, and to constitute deputy police officers. The commission is exempt from taxes, and its employees are, for insurance purposes, treated as other State employees.
Finally, there is evidence in the record that the Tannehill commission is funded by the Alabama legislature. It is certainly conceivable that a judgment for plaintiff would directly diminish any monetary appropriation made by that body out of the State treasury to the commission. Thus, this lawsuit directly affects a state property right and is "tantamount to a suit against the state." Gill v. Sewell, 356 So.2d 1196 (Ala. 1978). That fourteen of the seventeen individual defendants have homeowner's insurance policies, which plaintiff contends furnishes "potential" coverage against their liability, does not militate against this fact.
In sum, the commission's character, its function, and its funding identify the commission as the State of Alabama for purposes of § 14. Accordingly, the trial court was correct in granting summary judgment for the commission. The commission's immunity extends to both the tort and the implied contract claims brought against it. Cf. Hillyer v. Central Review Board,384 So.2d 1117 (Ala.Civ.App. 1980). *Page 1217 
We hold, likewise, that the commission members and park superintendent Nelson are immune from plaintiff's claims under the authority of DeStafney v. University of Alabama,413 So.2d 391 (Ala. 1981), and Bell v. Chisom, 421 So.2d 1239 (Ala. 1981).
DeStafney contains a review of the decisions of this Court dealing with the immunity of public officials and employees and concludes:
 "In summary, our cases, as well as the case law of other State immunity jurisdictions, adhere to the view that the State has an interest such as will prohibit suit against the State official or employee where the action is in effect against the State. . . ." 413 So.2d at 393.
DeStafney also recognized that our own tort liability rule respecting public officials and employees is in general accord with § 895D of the Restatement of Torts (Second), which recites in part:
 "(2) A public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial or legislative function.
 "(3) A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if
 "(a) he is immune because engaged in the exercise of a discretionary function . . . ." 413 So.2d at 393.
That portion of the Restatement's comments relating to the exercise of a discretionary function was noted:
 "There is no single test [for application by the courts in determining whether the state employee was engaged in exercising a discretionary function or, if he was, how extensively this circumstance should work in his defense]. Attempts to solve the problem by setting forth a precise definition of the term, discretionary function, have been less than helpful. The expression is not only a standard (see Comment d); it is also a legal conclusion whose purport is only somewhat incidentally related to the definitions of the two words composing it. Instead of looking at the dictionary, therefore, the court must weigh numerous factors and make a measured decision, on the basis of that assessment, both (1) whether the particular activity should be characterized as a discretionary function, and (2) whether the officer engaged in that activity should be entitled to a full or limited immunity, a privilege (to act either on the basis of reasonable belief or of the actual facts), or a finding that he was not negligent." 413 So.2d at 395.
In Bell v. Chisom, supra, this Court elaborated upon discretionary function immunity, referring to it as:
 "the ability of public officers to `engage in making a decision by weighing the policies for and against it.' . . .
". . . .
 ". . . The most common approach to the problem [of applying the concept of discretionary function] is to distinguish between planning and operational levels of action, with only the former being immune. Such terms, however, are only shorthand for a range of factors — discussed in the Restatement comments — that the court may need to consider. The problem is not to define terms like `discretionary' or `planning' but to make a pragmatic assessment of what, if any, degree of immunity is necessary to enable the particular governmental function to be effectively performed. . . ." 421 So.2d at 1241.
Commenting upon the application of this standard, this Court observed in Bell v. Chisom:
 "As the Restatement's comments suggest, the courts have at times found the discretionary function standard difficult to interpret. Nevertheless, in many cases this standard's proper application will be readily apparent. Two such cases will serve to illustrate the conflicting policy considerations the courts must apply. On the one hand, in DeStafney
itself we had no difficulty in rejecting the immunity claim of the individual defendant, an aide at the University day care center *Page 1218 
who allegedly allowed the plaintiff's child to fall off playground equipment. This defendant's function clearly required due care rather than difficult decision making. On the other hand, we accepted the claim of immunity in Gill v. Sewell, Ala., 356 So.2d 1196 (1978), where the director of a work release center was sued for his decision to release a convicted felon who shot the plaintiff. That decision was an exercise of discretion central to the defendant's function, and accordingly in DeStafney we noted, `unquestionably, Gill falls squarely within § 895D (3)(a) of the Restatement,'
413 So.2d at 394." 421 So.2d at 1241.
Under the evidence before the trial court in this case, it is clear that the individual defendants were engaged in discretionary functions in their relationship to the uses to which Mill Creek was put within Tannehill Park. Plaintiff's complaint alleged that the defendants "separately and severally were under a legal duty to establish, furnish, provide, and maintain an adequately safe place for visitors to swim and dive, or prohibit such activities altogether." Under the express requirements of § 41-9-320, however, the members of the commission were under a statutory duty to "preserve" the park as "a state park or historic site." In the performance of that duty, the evidence shows that the commission and the park superintendent, for aught that appears, in good faith sought to maintain the park, including the portion of Mill Creek within it, without altering its natural beauty and terrain. In order to help accomplish this purpose, park personnel, rather than encouraging swimming in Mill Creek, at the superintendent's instructions, erected signs around the stream stating that the stream was "dangerous" and that persons who swam "did so at their own risk." Those signs were present on the occasion in question. This decision clearly fell within the exercise of the discretion given to these officials by their duty and authority to maintain and preserve the park as a historic site. Cf. Gillv. Sewell, 356 So.2d 1196 (Ala. 1978) (release of prisoner from work release center held to be central to defendant-official's function and thus official was immune under Restatement § 895D (3)(a) on discretionary function.)
Because we hold that these individual defendants possessed discretionary function immunity, we need not address the question of their immunity as mere "conduits through which the State of Alabama has acted." See Milton v. Espey,356 So.2d 1201 (Ala. 1978), and Carter v. Board of Trustees of Universityof Ala., 431 So.2d 529 (Ala. 1983).
Finally, plaintiff urges this Court to overturn Art. I, § 14, of the Constitution of 1901, as being in violation of the Fourteenth Amendment to the United States Constitution and of the protection guaranteed in the Declaration of Rights in the Constitution of 1901. Plaintiff's principal argument here is that immunity, even constitutional immunity, insures that all persons similarly situated are not treated alike. "Those injured by private persons in a private capacity," plaintiff asserts, "have a right of redress in a judicial forum. Those injured in the same manner by the state are left without a remedy." Without consideration of the accuracy of this comparison, see Hutchinson v. Board of Trustees of Universityof Ala., 288 Ala. 20, 256 So.2d 281 (1970), we must first observe that there is no authority extant for the proposition that the Fourteenth Amendment requires a state to permit an action against itself. Indeed, in Palmer v. Ohio, 248 U.S. 32,39 S.Ct. 16, 63 L.Ed. 108 (1918), the United States Supreme Court reiterated the rule of long-standing that:
 "The right of individuals to sue a state, in either a federal or a state court, cannot be derived from the Constitution or laws of the United States. It can come only from the consent of the state. [Citations omitted.]" 248 U.S. at 34, 39 S.Ct. at 16.
Insofar as the Alabama Declaration of Rights is concerned, it is, of course, true that that Declaration assures redress for grievances, Constitution of 1901, § 13, and assures due process of law, § 6. The presence *Page 1219 
of these guarantees, we respectfully submit, does not repudiate other provisions of our state's organic law which the people themselves have established, however inconsistent to some they may appear to be. By adopting § 14, our people have placed a limitation upon their own ability to make their state "a defendant in any court." It would be incongruous for this Court to hold that this particular section of the Constitution of 1901 may not be enforced because it might appear to be in conflict with another. This follows from the requirement that constitutional provisions should be construed as a whole and in light of the entire instrument and to harmonize with its other provisions. Jefferson County v. Braswell, 407 So.2d 115 (Ala. 1981); State Docks Commission v. State ex rel. Cummings,227 Ala. 414, 150 So. 345 (1933). Nor is this Court authorized by its decisions in Jackson v. City of Florence, 294 Ala. 592,320 So.2d 68 (1975), and Lorence v. Hospital Board of MorganCounty, 294 Ala. 614, 320 So.2d 631 (1975), to withhold immunity here. Those decisions did not involve a constitutional grant of immunity, or the immunity of State officials and employees, as does this case.
The Court has carefully considered the arguments of counsel contained in their excellent briefs and in oral argument, and has concluded that the summary judgment granted below must be, and it is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.