CHRISTOPHER DOLNACK *v.* METRO-NORTH
COMMUTER RAILROAD COMPANY ET AL.
(12117)

LANDAU, SCHALLER and CRETELLA, Js.

Argued October 25, 1993—decision released March 29, 1994

*Joseph M. Brophy,* for the appellant (plaintiff).

*Daniel E. Ryan III,* with whom were *Charles A. Deluca* and, on the brief, *John F. Leydon, Jr.,* for the appellee (named defendant).

LANDAU, J. In this negligence action, the plaintiff appeals from the judgment of the trial court (1) granting the named defendant's motion for summary judgment,[1] thereby rejecting the plaintiff's claim that the named defendant should be estopped from raising the statute of limitations by special defense.

The following facts are relevant to this appeal. On September 1, 1989, a commuter train collided with the plaintiff's vehicle at a railroad crossing in Danbury. As a result of the collision, the plaintiff sustained injuries. On January 10, 1991, the plaintiff instituted this negligence action against the named defendant, Metro-North Commuter Railroad Company (Metro-North). The plaintiff was a Connecticut resident at the time of the accident. Metro-North operates a railroad service between Grand Central Terminal in New York City and New Haven with branch service to New Canaan, Danbury and Waterbury.[2]

On December 24, 1991, Metro-North filed an answer and three special defenses. On September 25, 1992, Metro-North filed a motion for summary judgment

---

[1] The trial court granted the motion for summary judgment filed by the named defendant, Metro-North Commuter Railroad Company. The two remaining defendants, Consolidated Rail Corporation and Peter O'Hara, are defending the plaintiff's negligence action pending in the trial court.

[2] Metro-North Commuter Railroad Company is authorized to do business in Connecticut and has a Connecticut agent for service. Metro-North also operates two other rail line services within the state of New York.

based on its special defense claiming that the plaintiff's action was barred by the statute of limitations. On January 19, 1993, the trial court filed a memorandum of decision granting Metro-North's motion for summary judgment.[3] The trial court found that Metro-North was a public authority created by the New York state legislature, and thus, under the sovereign immunity doctrine, subject to suit only to the extent that immunity was waived by statute. It further found that Metro-North is a wholly owned subsidiary of the Metropolitan Transit Authority, and that both the Transit Authority and Metro-North are public benefits corporations governed by the New York Public Authorities Law. The court stated that § 1276 (2) of the New York Public Authorities Law creates a right to sue the Transit Authority and its subsidiaries within one year after the cause of action in tort arises.[4] Because the plaintiff's action was commenced fifteen months after the cause of action arose, the trial court held that it was time barred under § 1276 (2) of the New York Public Authorities Law, and granted Metro-North's motion for summary judgment.[5] This appeal ensued.

"[T]he granting of summary judgment by the trial court must meet well established standards. Practice Book § 384 provides that '[t]he judgment sought shall be rendered forthwith if the pleadings, affidavits and

[3] On November 6, 1992, the trial court filed a memorandum of decision granting Metro-North's motion for summary judgment without argument or the benefit of the plaintiff's brief. On November 16, 1992, the plaintiff filed a motion to reargue, which the trial court granted on November 30, 1992. A second memorandum of decision was filed on January 19, 1993.

[4] The New York Public Authorities Law § 1276 (2) (McKinney 1982) provides in pertinent part: "An action against the authority founded on tort shall not be commenced more than one year after the cause of action therefor shall have accrued . . . ."

[5] In granting Metro-North's motion for summary judgment, the trial court rejected the plaintiff's claim of estoppel. Because resolution of the plaintiff's first claim is dispositive of this appeal, we do not address the estoppel claim.

any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Sharp* v. *Wyatt, Inc.*, 31 Conn. App. 824, 832, 627 A.2d 1347 (1993). "While the burden of showing the nonexistence of any material fact is on the party seeking summary judgment; see *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980); the party opposing [summary judgment] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . *Bassin* v. *Stamford,* 26 Conn. App. 534, 537, 602 A.2d 1044 (1992). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. *Strada* v. *Connecticut Newspapers, Inc.*, 193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. . . . *Trotta* v. *Branford,* [26 Conn. App. 407, 410, 601 A.2d 1036 (1992)]." (Internal quotation marks omitted.) *Cortes* v. *Cotton,* 31 Conn App. 569, 572–73, 626 A.2d 1306 (1993).

On the basis of our independent review of the doctrine of sovereign immunity, we conclude that the trial court improperly granted the defendant's motion for summary judgment. The trial court failed to make a threshold determination as to whether, as a matter of law, the defendant was entitled to claim sovereign immunity in this state. In making such a determination, the trial court is required to assess whether the action is, in effect, against the state,[6] or whether the

---

[6] In determining whether an action was a suit against the state, the court in *Robb* v. *Sutton,* 147 Ill. App. 3d 710, 713, 498 N.E.2d 267 (1986), analyzed two factors, the issues involved and the relief sought. "[I]f a judgment for the plaintiff could operate to control the actions of the State or subject it to liability, it will then be deemed an action against the State, even though the State is not a named party." Id.

defendant asserting sovereign immunity is an instrumentality of the state[7] to the extent that the interests or rights of the state are directly affected,[8] or whether the state has a pecuniary interest or substantive right to protect.[9] An examination of the attributes of the entity in question will disclose whether there is a state nexus. Several factors for consideration have evolved in determining whether a given entity is an "arm" of the government entitled to be clothed in the tort immunity of the state. These inquiries include whether the entity was created by the state and to whose control the entity is subject,[10] an analysis of the issues involved and the relief sought,[11] whether the state itself has a pecuniary interest or a substantive right in need of protection,[12] whether the governmental

[7] A governmental body cannot avoid suit simply because of its governmental nature. "[W]hether any governmental entity is amenable to suit depends upon whether it is or is not part of the [state] . . . ." *Specter* v. *Commonwealth*, 462 Pa. 474, 478, 341 A.2d 481 (1975).

[8] "In order for the doctrine [of sovereign immunity] to apply and immunity to attach, the relief asked must involve some direct or substantial interest of the state. (*Lefebvre* v. *Somersworth Shoe Co.*, 93 N.H. 354, 357 [41 A.2d 924 (1945)]; see *Morrill* v. *American Reserve Bond Co.*, 151 F. 305, 308–310 (1907); *Ex parte State*, 245 Ala. 193, [16 So. 2d 187 (1943)]; *Fidelity & Deposit Co.* v. *Shaid*, 103 W. Va. 432 [137 S.E. 878 (1927)] . . . .) Thus, even though the doctrine of sovereign immunity bars suits against the state and its agencies alike, that doctrine will not be applied where the state or governmental unit, although named as a defendant, is not an actual or interested adverse party." (Citation omitted; internal quotation marks omitted.) *Glassman* v. *Glassman*, 309 N.Y. 436, 443, 131 N.E.2d 721 (1956).

[9] In *Glassman* v. *Glassman*, 309 N.Y. 436, 444, 131 N.E.2d 721 (1956), the New York Court of Appeals held that the suit was not against the state because the state did not stand to lose or gain as a result of the litigation. The court ruled that in a suit against the state in which the doctrine of sovereign immunity applies, the state has a pecuniary interest or substantive right to protect. Id.; see also *Fidelity & Deposit Co.* v. *Shaid*, 103 W. Va. 432, 439, 137 S.E. 878 (1927) (declining to apply doctrine of sovereign immunity because no money judgment was sought against governmental agency or state).

[10] *Prendergast* v. *Park Authority*, 227 Va. 190, 194, 313 S.E.2d 399 (1984).

[11] *Robb* v. *Sutton*, 147 Ill. App. 3d 710, 712–13, 498 N.E.2d 267 (1986).

[12] *Glassman* v. *Glassman*, 309 N.Y. 436, 443, 131 N.E.2d 721 (1956).

body functions statewide, does the state's work, was created by the state legislature and is subject to local control, and to what extent the entity depends financially on state coffers,[13] and whether the instrumentality was created as a state agency and empowered to accomplish a public purpose.[14] Some other considerations are the character of power delegated to the governmental body by a legislative enactment,[15] the relation of the entity to the state,[16] whether the entity is a public corporation separate from the state,[17] and whether the instrumentality uses state owned land or owns the land independently.[18] The fact that an entity was created by a state statute does not alone establish that it is an arm of the state. Indeed, all of the above characteristics must be examined before a trial court can conclude that a governmental body is entitled to sovereign immunity.[19]

---

[13] *Ohio Valley Contractors* v. *Board of Education,* 170 W. Va. 240, 241, 293 S.E.2d 437 (1982). That an entity is heavily dependent on state financial support does not necessarily justify a conclusion that it is entitled to state immunity. Id., 242; see also *Deal* v. *Tannehill Furnace & Foundry Commission,* 443 So. 2d 1213, 1216 (Ala. 1983), where the state Supreme Court concluded that a state park commission was created as an arm of the state of Alabama and any judgment for the injured plaintiff would directly diminish any monetary appropriation made by the commission out of the state treasury. Such a payment, the court held, would directly affect a state property right and was "tantamount to a lawsuit against the State itself." Id.

[14] *Guthrie* v. *State Ports Authority,* 307 N.C. 522, 532, 299 S.E.2d 618 (1983).

[15] *Deal* v. *Tannehill Furnace & Foundry Commission,* 443 So. 2d 1213, 1216 (Ala. 1983).

[16] *Deal* v. *Tannehill Furnace & Foundry Commission,* 443 So. 2d 1213, 1216 (Ala. 1983).

[17] *Deal* v. *Tannehill Furnace & Foundry Commission,* 443 So. 2d 1213, 1215 (Ala. 1983).

[18] See *Deal* v. *Tannehill Furnace & Foundry Commission,* 443 So. 2d 1213, 1216 (Ala. 1983) (that state park commission used state-owned land for its statutory purpose was cited as one factor pointing to strong nexus between commission and state).

[19] The principle that a state's sovereign immunity from tort liability extends into a sister state is no longer a required tenet under the United

"In ruling on a motion for summary judgment, the trial court's function is not to decide issues of material fact, but rather to decide whether any such issues exist. *Telesco* v. *Telesco,* 187 Conn. 715, 718, 447 A.2d 752 (1982)." *Cortes* v. *Cotton,* 31 Conn. App. 569, 575, 626 A.2d 1306 (1993). Our review of the record shows that there was insufficient evidence presented by which the trial court could determine, as a matter of law, that the defendant was entitled to our state's sovereign

States constitution. *Nevada* v. *Hall,* 440 U.S. 410, 99 S. Ct. 1182, 59 L. Ed. 2d 416 (1979). In *Hall,* the plaintiffs brought suit in California to recover for injuries resulting from a automobile accident in California against the driver of an automobile owned by the university and state of Nevada. The Supreme Court held that a state is not constitutionally immune to suit in the courts of another state. The decision of the Nevada legislature to limit liability in tort was not one in which the people of California had any voice. The system adopted by California was a different system and the court held: "Each of these decisions is equally entitled to our respect." Id., 426. The *Hall* court explained that California's exercise of jurisdiction would not usurp the principles of sovereign immunity—"traffic accidents occurring outside of Nevada could hardly interfere with Nevada's capacity to fulfill its own sovereign responsibilities." Id., 424 n.24; see also *Daughtry* v. *Arlington County,* 490 F. Sup. 307 (D. D.C. 1980) (state of Virginia could be sued in District of Columbia for alleged misconduct of Virginia police); *Peterson* v. *Texas,* 635 P.2d 241 (Colo. App. 1981) (state of Texas could be sued for negligence in courts of Colorado); *Struebin* v. *Iowa,* 322 N.W.2d 84 (Iowa), cert. denied, 459 U.S. 1087, 103 S. Ct. 570, 74 L. Ed. 2d 933 (1982) (state of Illinois could be sued for wrongful death in courts of Iowa); *Hansford* v. *District of Columbia,* 329 Md. 112, 617 A.2d 1057 (1993) (District of Columbia could be sued in Maryland court for allegedly tortious activities in Maryland); *Wendt* v. *County of Osceola,* 289 N.W.2d 67 (Minn. 1979) (Iowa political subdivision could be sued in Minnesota for negligent failure to post adequate road signs and barricades); *Mianecki* v. *District Court,* 99 Nev. 93, 658 P.2d 422, cert. dismissed, 464 U.S. 806, 104 S. Ct. 570, 74 L. Ed. 2d 171 (1983) (doctrine of sovereign immunity did not prevent suit in Nevada against Wisconsin for actions of Wisconsin parolee in Nevada). The *Hall* court reasoned that "[i]t may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability. They are free to do so." *Nevada* v. *Hall,* supra, 426. Some states have declined jurisdiction as a matter of comity and public policy. See *Newberry* v. *Georgia Department of Industry & Trade,* 286 S.C. 574, 336 S.E.2d 464 (1985); *Simmons* v. *State,* 206 Mont. 264, 670 P.2d 1372 (1983).

immunity. Therefore, we conclude that the trial court improperly granted the motion for summary judgment.[20]

The judgment is reversed and the case is remanded with direction to deny the motion for summary judgment.

In this opinion the other judges concurred.

---

[20] The trial court cited, inter alia, *Ecker* v. *West Hartford,* 205 Conn. 219, 530 A.2d 1056 (1987), and *Morris Plan Industrial Bank* v. *Richards,* 131 Conn. 671, 42 A.2d 147 (1945), for the proposition that Connecticut's two year statute of limitations in negligence actions could not be applied in this case because it is a procedural limitation rather than substantive in nature. These cases hold that "[w]here . . . a specific time limitation is contained within a statute that creates a right of action that did not exist at common law [as does the statute in this case], then the remedy exists only during the prescribed period and not thereafter. . . . In such cases, the time limitation is not to be treated as an ordinary statute of limitation, but rather is a limitation on the liability itself, and not of the remedy alone." (Citations omitted.) *Ecker* v. *West Hartford,* supra, 232. We need not reach the substantive issue addressed in these cases because the threshold issue of whether there is sovereign immunity was not addressed by the trial court.