[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
The plaintiff instituted this proceeding against Danbury Hospital and Business Systems, Inc. The facts are undisputed by the parties. Blackwell applied for a position as an EMT with Business Systems' ambulance service and, at that time, her husband was already employed by Business Systems as a paramedic. She was told that she was ineligible for the position because the defendants' hiring policy forbids the employment of spouses in the same department. The plaintiff was otherwise qualified for the position. Instead, the defendants contend that their policy is a valid "anti nepotism" rule that does not constitute illegal discrimination based on "marital status." The plaintiff argues that the policy is discriminatory and violates Sec. 46a-60 (a)(1) of the General Statutes.
"In ruling on a motion for summary judgment, the trial court's function is not to decide issues of material fact, but rather to decide whether any such issues exist." (Citations omitted, internal quotation marks omitted.) Dolnack v.Metro-North Commuter Railroad Co., 33 Conn. App. 832, 838,639 A.2d 530 (1994). Under Sec. 384 of the Practice Book, the judgment sought "`shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."' Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202, 663 A.2d 1001 (1995). To oppose a motion for summary judgment successfully, the nonmoving party must recite specific facts that contradict those stated in the moving party's affidavits and documents. Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 579, 573 A.2d 699 (1990). "In deciding a motion for summary judgment, the trial court must view CT Page 4777 the evidence in the light most favorable to the nonmoving party."Haesche v. Kissner, 229 Conn. 213, 217, 640 A.2d 89 (1994), quoting Connecticut Bank Trust Co. v. Carriage Lane Associates,219 Conn. 772, 781, 595 A.2d 334 (1991).
Section 46a-60 (a) states, in part: "It shall be a discriminatory practice in violation of this section . . . [f]or an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ . . . any individual . . . because of the individual's . . . marital status." The defendants argue that the term "marital status" only refers to the condition of being married or unmarried, not to the identity of a job applicant's spouse. This interpretation of the statute would not require the defendant to demonstrate "bona fide occupational qualification or need" in order to prevail in this action because their proffered definition would put their action beyond the scope of the statute. The plaintiff agrees that the issue raised is whether "marital status" includes the identity of an individual's spouse.
"As is true in every case involving the construction of a statute [the court's] . . . starting point must be the language employed by the legislature." Keeney v. Fairfield Resources,Inc., 41 Conn. App. 120, 131, ___ A.2d ___ (1996), quoting Verdon v.Transamerica Ins. Co., 187 Conn. 363, 366, 446 A.2d 3 (1982). If the court, finds that language to be plain and unambiguous, the court need I go no further. Id., 132. "If, however, the statute is ambiguous . . . or susceptible to alternative conflicting interpretations, [the court] will seek guidance from extrinsic aids, [such as] the legislative history" and relevant interpretations from other jurisdictions. (Internal quotation marks omitted.) Id. Johnson v. Manson, 196 Conn. 309, 319,493 A.2d 846, cert. denied, 474 U.S. 1063 106 S.Ct. 813 (1985).
As a rule designed to eliminate discrimination, the statute is remedial, and thus should be liberally construed in favor of individuals in the plaintiff's position. Hartford Fire Ins. Co. vBrown, 164 Conn. 497, 503, 325 A.2d 228 (1973). [The] [t]erm "marital status" is, nevertheless, susceptible to the alternative interpretations suggested by the parties, and therefore requires further consideration.
The marital status provision of General Statutes 46a-60
(a)(1) was added by Public Act 75-446, "An Act Prohibiting Discrimination in Employment on Account of Marital Status." The CT Page 4778 legislative history does not include a specific definition of "marital status," but it does include one representative's description of the bill as requiring elimination of "such practices as limiting promotions to persons having the ideal family . . . and that marriage, divorce, widowed and single people's employment opportunities be on the basis of merit and affirmative action." 18 H.R. Proc., 1975 Sess., p. 5169, remarks of Representative Morton. Public Act 75-446 was the final volume of a trilogy of public acts that also prohibited discrimination on the basis of marital status in credit transactions and public accommodations. ("In 1973, the legislature provided protection against marital status discrimination in the area of credit transaction and in 1974, in public accommodations. This amendment completes the coverage. . . ."); see also P.A. 73-573 (credit transactions); P.A. 74-205 (public accommodations).
As neither the statute nor the legislative history defines "marital status," the court may consider the definition of the same phrase in the other statutes. Link v. Shelton, 186 Conn. 623,627, 443 A.2d 902 (1982). "On the basis of analogy, the interpretation of a [questioned] statute may be influenced by [the] language of other statutes which are not specifically related, but which apply to similar persons, things, or relationships." 2B J. Sutherland, Statutory Construction § 53.03 (5th Ed. 1992), citing Overstreet v. North ShoreCorp., 318 U.S. 125, 87 L.Ed. 492, 63 S.Ct. 494 (1943). The use of the term "marital status" in P.A. 73-573 and P.A. 74-205 may well illuminate the meaning of the term as used in its P.A. 74-446 context.
The debate over the first two bills in the marital status trilogy was more extensive and, hence, yields greater insight into the intended meaning of the phrase at issue. In promoting P.A. 73573, a representative described the bill as addressing "lending institutions [that] discriminate particularly against those women who are either separated or divorced as opposed to single women. . . ." Conn. Joint Standing Committee Hearings, Human Rights Opportunities, 1973 Sess. p. 19, remarks of Representative Morris. Similarly, the testimony before the Committee was replete with commentary on the difficulties faced by single, divorced, separated, and widowed women seeking credit. See, id., p. 22, testimony of Attorney Shirley Bysiewicz. The representative proposing P.A. 74-205 explicitly emphasized that "[a]ll it says, very clearly, is that you cannot refuse to rent to somebody just because they are single, divorced or separated." CT Page 4779 17 H.R. Proc., Pt. 6, 1974 Sess., p. 3201, remarks of Representative E. Ronald Bard. The legislature further debated the bill in a manner that could only be the product of a general understanding that the term "marital status" refers to whether a person is married or unmarried.[1] The question of to whom a person is married was never mentioned in the history of any of the three acts.
Based on the legislative history of the three related acts, the definition of "marital status" can only be the condition of being single, married, separated, divorced or widowed. The marital status of a married individual is "married," and the identity of the individual's spouse does not affect that status.
The plaintiff cites a number of cases from other jurisdictions holding that the identity of a spouse is a component of "marital status." See, e.g., Thompson v. Board ofTrustees, 627 P.2d 1229 (Mont. 1981); Kraft, Inc. v. State,284 N.W.2d 386 (Minn. 1979). Nevertheless, it is clear from the legislative history that CONNECTICUT clearly contemplated that "marital status" would only refer to the condition of being single, married separated divorced or widowed. (Emphasis added.) The court is obligated to interpret the law in accordance with the legislature's intent. Carpenteri-Waddington Inc. v.Commissioner of Revenue Services, 231 Conn. 355, 362, ___ A.2d ___ (1994). In the face of a clear statement of such intent, the meaning of the statute may only be altered by the legislature. See Lyman v. Adorno, 133 Conn. 511, 514, 52 A.2d 702 (1947) (observing that "legislature is the arbiter of public policy").
The parties in the present action agree that the plaintiff was refused employment because of the identity of her spouse. Because the identity of her spouse is not a component of "marital status," the defendant did not discriminate against the plaintiff in violation of Sec. 46a-60 (a)(1) of the General Statutes. There being no genuine issues of material fact, the defendants are entitled to judgment as a matter of law, and the motion for summary judgment is, accordingly, granted.
Morahan, J.