# NATALE RUISI *v.* TIMOTHY O'SULLIVAN, EXECUTIVE DIRECTOR, THE LAWYERS' FUND FOR CLIENT PROTECTION
## (AC 32912)

Beach, Bear and Peters, Js.

Argued September 23—officially released November 1, 2011

*Charles J. Quackenbush,* assistant attorney general of New York, with whom, on the brief, was *Eric T. Schneiderman,* attorney general of New York, for the appellant (defendant).

*Natale Ruisi,* pro se, the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant, Timothy O'Sullivan, executive director of the Lawyers' Fund for Client Protection of the state of New York (fund), appeals from the judgment of the trial court denying his motion to strike the complaint of the plaintiff, Natale Ruisi, on the ground of sovereign immunity.[1] On appeal, the defendant claims that the court erred in denying his motion and in declining to consider his claim of sovereign immunity. We conclude that the court improperly declined to consider the merits of the defendant's sovereign immunity defense, and, accordingly, we set aside the judgment and remand the case to the trial court for further proceedings.

The record reveals the following undisputed facts and procedural history. The plaintiff, who is a self-represented party, filed an action in the Connecticut Superior Court against the defendant, claiming that the fund mishandled its monetary award to the plaintiff arising from the malfeasance of one or more of his former attorneys and that the award was not sufficient

---

[1] Although the plaintiff's claims primarily are directed against the fund, the plaintiff named only O'Sullivan, as the executive director of the fund, in the complaint. Therefore, in this appeal, we refer to O'Sullivan as the defendant.

given the amount of the damages sustained by the plaintiff.[2] The plaintiff claimed, inter alia, that the actions of the fund caused him to suffer substantial monetary losses and stress.

The defendant first filed a motion to dismiss, alleging that the court lacked (1) subject matter jurisdiction over the action because the plaintiff's claims were barred by the doctrine of sovereign immunity and (2) personal jurisdiction over the defendant because of improper service of process. The court denied that motion, holding that the papers properly had been served and that a claim of "sovereign immunity is best raised by special defense." The defendant then filed a motion to strike, in which he again alleged that the plaintiff's claims were barred by the doctrine of sovereign immunity and that the court did not have personal jurisdiction. In its memorandum of decision, the court denied the defendant's motion, stating in relevant part that "[a]ll of the allegations in the motion to strike can be raised in the answer and special defenses, and a judge or jury would have the opportunity to find the law and the facts as are necessary." The defendant appeals from that ruling.

Because the court's ruling on the issue of personal jurisdiction is not a final judgment; see *Chrysler Credit Corp.* v. *Fairfield Chrysler-Plymouth, Inc.*, 180 Conn. 223, 226–27, 429 A.2d 478 (1980); the sole issue before us on appeal is whether the court should have considered the defendant's claim that the plaintiff's action was barred by the doctrine of sovereign immunity and, therefore, that the court was without subject matter jurisdiction.[3] "The general rule is that the denial of a

---

[2] The record does not contain any information about the plaintiff's right to bring an action against the fund or to appeal from its decision, and, if such rights existed, whether the plaintiff exercised them in the appropriate New York courts.

[3] The second time the defendant asserted his defense of sovereign immunity, he did so improperly via a motion to strike. See *Egri* v. *Foisie*, 83 Conn. App. 243, 247, 848 A.2d 1266 ("The motion to dismiss is governed by Practice Book §§ 10-30 through 10-34. Properly granted on jurisdictional

motion to dismiss is an interlocutory ruling and, there-fore, is not a final judgment for purposes of appeal. . . . [Our Supreme Court has] concluded [however] that the denial of a motion to dismiss based on a colorable claim of sovereign immunity is an immediately appealable final judgment because the order or action so concludes the rights of the parties that further proceedings cannot affect them." (Citations omitted; internal quotation marks omitted.) *Flanagan* v. *Blumenthal*, 265 Conn. 350, 352 n.4, 828 A.2d 572 (2003). After considering the record before us, we conclude that the court improperly (1) instructed the defendant to raise the issue of sover-eign immunity as a special defense; see *Carrubba* v. *Moskowitz*, 81 Conn. App. 382, 398–99, 840 A.2d 557 (2004) (unlike qualified quasi-judicial immunity and governmental immunity, which should be raised by spe-cial defense, sovereign immunity, which implicates sub-ject matter jurisdiction, should be raised by motion to dismiss), aff'd, 274 Conn. 533, 877 A.2d 773 (2005); and (2) declined to determine whether it had subject matter jurisdiction over this case. See, e.g., *D'Eramo* v. *Smith*, 273 Conn. 610, 616, 872 A.2d 408 (2005) (question regarding subject matter jurisdiction must be disposed of regardless of form in which it is presented and court

---

grounds, it essentially asserts that, as a matter of law and fact, a plaintiff cannot state a cause of action that is properly before the court. *Third Taxing District* v. *Lyons*, 35 Conn. App. 795, 803, 647 A.2d 32, cert. denied, 231 Conn. 936, 650 A.2d 173 [1994]; see Practice Book § 10-31. By contrast, the motion to strike attacks the sufficiency of the pleadings. Practice Book § 10-39; see also 1 E. Stephenson, Connecticut Civil Procedure [3d Ed. 1997] § 72 [a], pp. 216–17."), cert. denied, 271 Conn. 931, 859 A.2d 930 (2004). The court, nonetheless, should have considered whether it had subject matter jurisdiction in the case. See generally *Markley* v. *Dept. of Public Utility Control*, 301 Conn. 56, 63–64, 23 A.3d 668 (2011) (although issue raised again via motion to strike, court properly considered whether it had subject matter jurisdiction in case and properly dismissed case upon concluding it lacked jurisdiction); *D'Eramo* v. *Smith*, 273 Conn. 610, 616, 872 A.2d 408 (2005) ("[o]nce the question of lack of [subject matter] jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented" [internal quotation marks omitted]).

must resolve question before proceeding further with case). Accordingly, we set aside the judgment and remand the matter to the trial court for further proceedings.

Our law regarding sovereign immunity and its interrelationship with the trial court's subject matter jurisdiction is clear. "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction . . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. . . . When issues of fact are necessary to the determination of a court's jurisdiction, [however] due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses. . . . When an evidentiary hearing is required to determine the trial court's subject matter jurisdiction, we engage in a two part inquiry. . . . We determine first whether the facts found by the court were clearly erroneous and then conduct a plenary review of the court's legal conclusions." (Citations omitted; internal quotation marks omitted.) *Gordon* v. *H.N.S. Management Co.*, 272 Conn. 81, 92–93, 861 A.2d 1160 (2004). In this case, however, the trial court did not make the necessary factual findings, nor did it determine whether it had subject matter jurisdiction over the plaintiff's action. Instead, it improperly ruled that the defendant should raise this jurisdictional question as a special defense. "An evidentiary hearing is necessary [when] a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 653–54, 974 A.2d 669 (2009), quoting *Coughlin* v. *Waterbury*, 61 Conn. App. 310, 315, 763 A.2d 1058 (2001).

In *Dolnack* v. *Metro-North Commuter Railroad Co.*, 33 Conn. App. 832, 834, 639 A.2d 530 (1994), an issue

before this court was whether a New York "public bene-fits corporation" was an arm of the state that was enti-tled to raise sovereign immunity as a defense. Relying on cases from other jurisdictions, we identified several factors to be considered in making this determination, including whether: (1) the entity was created by the state; id., 836; (2) the entity was subject to control by the state; id.; (3) the entity performed the work of the state; id., 836–37; (4) the state had a pecuniary interest or a substantive right in need of protection; id., 836; and whether (5) the entity was financially dependent on the state. Id., 837. We concluded that "all of the above characteristics must be examined before a trial court can conclude that a governmental body is entitled to sovereign immunity." Id. Having identified these cri-teria, we concluded that the factual record in *Dolnack* had not been adequate for the trial court to have made such a determination.[4] Id., 838–39.

Relying in part on *Dolnack*, our Supreme Court in *Gordon* v. *H.N.S. Management Co.*, supra, 272 Conn. 98–100, determined that "the criteria for determining

[4] In *Dolnack*, we noted that the application by this state of the doctrine of sovereign immunity to a foreign state or its agencies is not mandated by the United States constitution: "The principle that a state's sovereign immu-nity *from tort liability* extends into a sister state is no longer a required tenet under the United States constitution. *Nevada* v. *Hall*, 440 U.S. 410, 99 S. Ct. 1182, 59 L. Ed. 2d 416 (1979)." (Emphasis added.) *Dolnack* v. *Metro-North Commuter Railroad Co.*, supra, 33 Conn. App. 837 n.19. We further noted that "[t]he *Hall* court reasoned that '[i]t may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability. They are free to do so.' *Nevada* v. *Hall*, supra, 426. Some states have declined jurisdiction as a matter of comity and public policy. See *Newberry* v. *Georgia Dept. of Industry & Trade*, 286 S.C. 574, 336 S.E.2d 464 (1985); *Simmons* v. *State*, 206 Mont. 264, 670 P.2d 1372 (1983)." *Dolnack* v. *Metro-North Commuter Railroad Co.*, supra, 838 n.19. In the present case, the plaintiff's complaint is drawn inartfully. If the trial court deems it necessary, on remand, it also may have to determine whether the plaintiff's one count complaint as currently pleaded alleges a tort, breach of contract or some other theory before considering the question of sovereign immunity.

whether a corporate entity is an arm of the state entitled to assert sovereign immunity as a defense are whether: (1) the state created the entity and expressed an intention in the enabling legislation that the entity be treated as a state agency; (2) the entity was created for a public purpose or to carry out a function integral to state government; (3) the entity is financially dependent on the state; (4) the entity's officers, directors or trustees are state functionaries; (5) the entity is operated by state employees; (6) the state has the right to control the entity; (7) the entity's budget, expenditures and appropriations are closely monitored by the state; and (8) a judgment against the entity would have the same effect as a judgment against the state." The court also explained that "[t]o establish that an entity is an arm of the state, an entity need not satisfy every [criterion]. Rather, [a]ll relevant factors are to be considered cumulatively, with no single factor being essential or conclusive. . . . We recognize that these criteria are somewhat interrelated and overlapping. For example, a determination that an entity is completely financially dependent on the state could lead to an inference that the entity is controlled by the state. Similarly, a determination that the state has the right to control the entity could lend support to a determination that a judgment against the entity would affect the state." (Citation omitted; internal quotation marks omitted.) Id., 100.

Because the issue of subject matter jurisdiction must be addressed when raised and cannot be waived, we conclude that the court in the present case was required to make the necessary factual inquiry to determine whether it had jurisdiction. Although we are mindful that there are times when the question of jurisdiction is intertwined so intimately with the merits of the case, such that a resolution of the jurisdictional question cannot be made until there is a full trial on the merits; see *Conboy* v. *State*, supra, 292 Conn. 654; there is

no indication that the court was faced with such a circumstance here.

The judgment is set aside and the case is remanded to the trial court for further proceedings consistent with this opinion.

In this opinion the other judges concurred.