This is an interlocutory appeal, pursuant to Rule 5, Ala.R.App.P., by Tallaseehatchie Creek Watershed Conservancy District ("TCWCD") from an order of the trial court denying its motion to dismiss the plaintiff's action. The only issue is whether TCWCD is clothed with sovereign immunity by virtue of Ala. Const. 1901, art. I, § 14, and therefore is not subject to suit in the courts of this state.
The plaintiff, Mary Ann Allred, as administratrix of the estate of Camie Jo Allred Headrick, deceased, brought an action against TCWCD and other defendants after Headrick died from injuries received in a swimming accident. The complaint alleged, inter alia, that TCWCD negligently and/or wantonly failed to maintain one of its dams and that its negligence or wantonness caused Headrick's death; the complaint also alleged against TCWCD a negligent failure to warn concerning the dangerous conditions related to the dam. TCWCD moved to dismiss the action, and the trial court denied the motion without making findings of fact or conclusions of law. This appeal by permission followed.
The Alabama Constitution of 1901, art. I, § 14, provides "That the state of Alabama shall never be made a defendant in any court of law or equity." TCWCD contends that it is entitled to the protection of sovereign immunity because it is a component in a group of state agencies created by the legislature for the protection and regulation of the natural resources of Alabama. The legislature has stated its policy of preserving the resources of this state in Ala. Code 1975, §9-8-21(b). That section states: *Page 629 
 "It is hereby declared to be the policy of the legislature to provide for the conservation of the soil and soil resources of this state and for the control and prevention of soil erosion, thereby to preserve natural resources, control floods, prevent impairment of dams and reservoirs, assist in maintaining the navigability of rivers and harbors, preserve wildlife, protect the tax base, protect public lands and protect and promote the health, safety and general welfare of the people of this state."
To further these aims, the legislature created the State Soil and Water Conservation Committee ("Committee"). This nine-member committee is empowered to perform various governmental functions to effectuate the policy of the legislature. Ala. Code 1975, § 9-8-22. The Committee is also given authority to create soil and water conservation districts ("SWCD") upon the petition of at least 25 landowners who reside in the area to be covered by the district. Ala. Code 1975, §9-8-23. The Committee appoints a separate board of supervisors to govern each SWCD and also pays all expenses incurred in the creation of an SWCD. Ala. Code 1975, §§ 9-8-23 and 9-8-24.
The SWCDs operate under the supervision of the Committee and are engaged primarily in preventing erosion of the soil through proper land use and other measures. Ala. Code 1975, § 9-8-25. Section 9-8-25 provides that an SWCD "shall constitute a governmental subdivision of this state and a public body, corporate and politic, exercising public powers."
Section 9-8-51 authorizes the creation of Watershed Conservancy Districts ("WCD"); a WCD is defined as follows in § 9-8-50:
 "(1) A subdivision of a soil and water conservation district which constitutes a governmental subdivision of this state and a public body, corporate and politic, organized in accordance with the provisions of this article for the purpose, with the powers and subject to the restrictions set forth in this article."
TCWCD contends that it is inextricably intertwined with entities that are agencies of the state, and that therefore it, too, should be considered an agency of the state. TCWCD points out that its own board of directors can take no action without the prior approval of the board of supervisors of an SWCD, Ala. Code 1975, § 9-8-61, and that the board of supervisors of an SWCD is itself controlled by the Committee. TCWCD relies onDeal v. Tannehill Furnace Foundry Commission, 443 So.2d 1213
(Ala. 1983), and Armory Commission of Alabama v. Staudt,388 So.2d 991 (Ala. 1980), to support the assertion that it is an agency of the state.
The appellee Allred responds with the argument that TCWCD is not an agency of the state as such, but is a public corporation exercising normal corporate powers. Allred argues that, because the legislature has expressly authorized TCWCD to sue and be sued, Ala. Code 1975, § 9-8-61(6), and TCWCD is defined in the Code as a corporate body, no justification exists for immunizing TCWCD from suit under the aegis of sovereign immunity. Allred relies principally upon Curtis v. Alabama ElkRiver Development Agency, Inc., 372 So.2d 353
(Ala.Civ.App. 1979), and Thomas v. Alabama Municipal Electric Authority,432 So.2d 470 (Ala. 1983), to buttress her assertion that TCWCD is a separate entity and not an agency of the state.
It is true that this Court has held that certain corporations authorized by the legislature to perform beneficent public purposes have been characterized as "separate entities," and therefore considered not strictly part of the state. See Knightv. West Alabama Environmental Improvement Authority, 287 Ala. 15, 246 So.2d 903 (1971); Edmondson v. State IndustrialDevelopment Authority, 279 Ala. 206, 184 So.2d 115 (1966). These cases, however, dealt with the constitutional limitation on the state's power to create new debt, Ala. Const. 1901, § 213 (now amendment 26), and the constitutional proscription against state investment in private enterprise, Ala. Const. 1901, § 93; they did not specifically address the sovereign immunity issue. *Page 630 
Three of the four major cases cited by the parties — Deal,Staudt, and Thomas — employ a test that emphasizes substance over form for determining whether legislatively created entities are covered by sovereign immunity. This test, which discounts the "corporate" label attached to many such entities in the Code, was enunciated in Armory Commission of Alabama v.Staudt, 388 So.2d 991, 993 (Ala. 1980). There the Court stated:
 "We . . . hold that some determination, other than the fact of incorporation, is required. Whether a lawsuit against a body created by legislative enactment is a suit against the state depends on the character of power delegated to the body, the relation of the body to the state, and the nature of the function performed by the body. All factors in the relationship must be examined to determine whether the suit is against an arm of the state or merely against a franchisee licensed for some beneficial purpose. State Docks Commission v. Barnes, 225 Ala. 403, 406-07, 143 So. 581, 584
(1932)."
The application of this test to the present situation yields no unequivocal solution, however. Initially, there are numerous factors suggesting that TCWCD is an agency of the state. WCDs are statutorily authorized to act as agents of the state. Ala. Code 1975, § 9-8-61(7). WCDs have the power of eminent domain to acquire lands necessary to perform their assigned functions, Ala. Code 1975, § 9-8-61(1), and WCDs are exempt from state and local taxation, Ala. Code 1975, § 9-8-67. Finally, the Code authorizes the comptroller to pay all administrative and other expenses incurred by the Committee and the SWCDs to the limit of the appropriation for those entities. Ala. Code 1975, §9-8-32. This provision is particularly important, for this Court has often held that sovereign immunity will preclude an action for damages against a legislatively created entity or agent of the state, when the state treasury would be adversely affected by an award for the plaintiff. See Druid City Hospitalv. Epperson, 378 So.2d 696 (Ala. 1979); Milton v. Espey,356 So.2d 1201 (Ala. 1978); Gill v. Sewell, 356 So.2d 1196
(Ala. 1978). Indeed, in Thomas, supra — one of the two principal cases relied upon by the plaintiff Allred — this Court, in characterizing an electric company as a public corporation, stated:
 "In this case, the Authority exists as a public corporation separate and apart from the State. Any liabilities the Authority might incur would never be payable out of the State Treasury."
(Emphasis added.) Here, it is possible that a judgment for the plaintiff would be paid out of the state treasury, at least to the extent of the appropriation. Therefore, this factor militates in favor of characterizing TCWCD as an agency of the State.
On the other hand, several factors seem to favor characterizing TCWCD as a public corporation or separate entity. First, the Code expressly allows both SWCDs and WCDs to sue and to be sued, Ala. Code 1975, §§ 9-8-25(a)(13), 9-8-61(6). Also, the Code provides that WCDs can sell and dispose of property, make contracts, and issue bonds, Ala. Code 1975, §9-8-61(4) and (5); the Code further provides that all contracts made and bonds issued by the WCDs "shall be solely andexclusively obligations of the district and shall not be anobligation or debt of the state of Alabama or any county ormunicipality therein," Ala. Code 1975, § 9-8-61(3) (emphasis added). This last provision clearly contemplates that WCDs are entities separate and apart from the State; the provision also introduces an element of ambiguity into the crucial question of the financial responsibility for any judgment adverse to a WCD.
The resolution of this issue is made more difficult by the fact that this Court has never had occasion to characterize a WCD as either a public corporation or a state agency for purposes of sovereign immunity. The United States Court of Appeals for the Sixth Circuit, however, has been squarely presented with the issue in Lenoir v. Porters Creek WatershedDistrict, 586 F.2d 1081 (6th Cir. 1978). In Lenoir, the plaintiff brought an action against several defendants, including the United States Department of Agriculture, under *Page 631 
the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671-2680 (1976), and the Porters Creek Watershed District ("Porters Creek") under a state tort theory. The Porters Creek WCD was created by Tennessee statutes almost identical to the statutes at issue here — WCDs in Tennessee are bodies "corporate and politic." Tenn. Code Ann. § 70-1818 (1976) (now codified at Tenn. Code Ann. § 69-7-118 (Repl.Vol. 1987)). Likewise, the Tennessee statutes allow a WCD "to sue and be sued by its corporate name." Tenn. Code Ann. § 70-1818(b) (1976) (now codified at Tenn. Code Ann. § 69-7-118(2) (Repl.Vol. 1987)). The court of appeals, in assessing the sovereign immunity argument propounded by Porters Creek, held that Porters Creek was a political unit sufficiently independent not to be considered an agency of the state. Instead, the Court analogized Porters Creek to a municipal or public corporation. See also Gallagherv. Albuquerque Metropolitan Arroyo Flood Control Authority,90 N.M. 309, 563 P.2d 103 (App. 1977), cert. denied, 90 N.M. 636,567 P.2d 485 (N.M. 1977) (flood control authority construed as a quasi-municipal corporation); Buchanan v. Los Angeles CountyFlood Control District, 56 Cal.App.3d 757, 128 Cal.Rptr. 770
(1976) (flood control district, notwithstanding status as public entity, not immune from liability for nuisance). The court held that Porters Creek was immune from suit nonetheless, because it was exercising a governmental, instead of a proprietary, or private, function. Last, the court determined that Porters Creek had not waived its immunity despite the statutory language allowing it to sue or be sued in its corporate name.
The analysis by the court of appeals in Lenoir is especially useful, given the inconclusive application of the Staudt test to the present situation. This Court is persuaded that the Sixth Circuit Court of Appeals correctly concluded that the Porters Creek Watershed was not an agency of the state under Tennessee law. This treatment accords with our statement inThomas v. Alabama Municipal Electric Authority, 432 So.2d 470,480 (Ala. 1983): "This court has held that the use of the word 'State' in Section 14 was intended to protect from suit only immediate and strictly governmental agencies of the State. Exparte Board of School Commissioners of Mobile County, 230 Ala. 304,161 So. 108 (1935)." Moreover, the ground on which the Sixth Circuit Court of Appeals found immunity in Lenoir
— that Porters Creek was engaged in a governmental, as opposed to a proprietary, function — has been abolished in Alabama with respect to both municipal corporations and counties. Cookv. St. Clair County, 384 So.2d 1 (Ala. 1980); Jackson v. City ofFlorence, 294 Ala. 592, 320 So.2d 68 (1975); Lorence v.Hospital Board of Morgan County, 294 Ala. 614, 320 So.2d 631
(1975). Therefore, TCWCD will be subject to suit unless the language in Ala. Code 1975, § 9-8-61(6), is insufficient to authorize an action against TCWCD. Here, our law supports a result different from that reached by the court of appeals inLenoir, where it was held that language similar to the "sue or be sued" wording of § 9-8-61(6) was insufficient to authorize actions against WCDs. The Cook, Jackson, and Lorence decisions provide that such "sue or be sued" language supports a holding that actions are authorized against the particular legislatively created entity. The Cook court, in the context of an action against a county, stated that the inclusion of the "sue or be sued" language in the statute was a clear indication that counties were not to be immune from actions merely because of their status as governmental entities. The same reasoning applies here, and this Court will not require any greater authorization from the legislature to subject WCDs to actions.[1]
Accordingly, this Court holds that TCWCD is not an agency of the state within the meaning of § 14 of the Alabama Constitution and thus is not *Page 632 
immune from actions in the courts of this state.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] The conclusion that TCWCD has statutorily consented to suit is buttressed by the fact that TCWCD signed an easement agreement with Kimberly-Clark Corporation — the owner of the property on which the accident made the basis of the action occurred — agreeing to indemnify Kimberly-Clark and hold it harmless in case of an accident.