The Alabama Corrections Institute Finance Authority ("ACIFA"), the Department of Corrections (sometimes referred to herein as "the Department"), and certain officials of each of these two entities were named as defendants in a lawsuit. The lawsuit was filed by a correctional officer who had been stabbed by an inmate. The trial court entered a summary judgment in favor of these defendants, and the plaintiff appealed. We must determine whether these defendants were entitled to immunity.
Because this appeal is from a summary judgment, our review is governed by this standard:
 "[A] party moving for a summary judgment is entitled to such a judgment if that party meets the following two-tiered standard: 1) There must be no genuine issue of material fact, and 2) the movant must be entitled to a judgment as a matter of law. [Ala.R.Civ.P.] 56(c); Carpenter v. Davis, 688 So.2d 256, 258 (Ala. 1997). Furthermore, this Court must view all the evidence in a light most favorable to the nonmovant and must resolve all reasonable questions from the evidence in favor of the nonmovant. Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256 (Ala. 1991); See Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
 "The movant must make a prima facie showing that there are no genuine issues of material fact and that he is entitled to a judgment as a matter of law. Fincher, 583 So.2d at 257. If the movant makes this showing, the burden then shifts to the nonmovant to rebut the movant's prima facie showing by presenting `substantial evidence' creating a genuine issue of material fact. Id. `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala. 1989)."
Ex parte Alabama Dep't of Transp., [Ms. 1981916, Feb. 25, 2000],547 So.2d 870, 871 (Ala. 2000).
 I.
Walter Rodgers, a correctional officer at St. Clair Correctional Facility ("St. Clair"), *Page 966 
was stabbed by an inmate while he was at work. St. Clair is a large facility, and it contains many cells, each of which contains two air vents. James DeLoach, the warden of St. Clair at the time of the stabbing, testified in his deposition that the prison had experienced problems concerning crude, prisoner- made knives. In fact, the use of these knives was a primary source of physical harm to correctional officers. According to DeLoach, some of these weapons were discovered to have been made from slats taken from air vents located in prisoners' cells. DeLoach said that while the prison had experienced problems with these weapons, the warden who preceded him had decided that the cost of replacing these vents with a safer grate was prohibitive. After this decision was made, an inmate stabbed Rodgers in the fall of 1996 with a knife made from an air-vent slat that had been taken from the vents the warden had decided not to replace.
Rodgers sued Joe Hopper in his official capacity as commissioner of the Department of Corrections, as a member of the Capital Outlay Oversight Commission (which is affiliated with the Department), and as the vice president of ACIFA; Michael Haley, as Hopper's successor in each of the aforementioned capacities; and James DeLoach, who was the warden of St. Clair when the stabbing occurred. Rogers alleged negligence, wantonness, and violations of his due-process rights guaranteed under the Alabama Constitution.[1] The trial court granted the defendants' jointly filed motion for a summary judgment, holding that they were immune from liability pursuant to Art. I, § 14, of the Constitution of Alabama 1901.
Rodgers's appeal from the summary judgment raises three issues: (1) Whether ACIFA is an agency of the State within the meaning of Art. I, § 14, of the Constitution; (2) whether the Legislature has waived sovereign immunity for the Department of Corrections; and (3) whether the individual defendants are entitled to immunity.
 II.
Rodgers argues that ACIFA is not entitled to sovereign immunity because, he argues, it is not an agency of the State and thus is not protected by Art. I, § 14, of the Constitution. Section 14 provides: "[T]he State of Alabama shall never be made a defendant in any court of law or equity." This Court has held that "the use of the word `State' in Section 14 was intended to protect from suit only immediate and strictly governmental agencies of the State." Tallaseehatchie Creek WatershedConservancy Dist. v. Allred, 620 So.2d 628, 631 (Ala. 1993) (quoting Thomas v. Alabama Mun. Elec. Auth., 432 So.2d 470, 480
(Ala. 1983)). Thus, we must determine what constitutes an "immediate and strictly governmental agenc[y]." The test for determining whether a legislatively created body is an immediate and strictly governmental agency for purposes of a sovereign-immunity analysis involves an assessment of (1) the character of the power delegated to the body; (2) the relation of the body to the State; and (3) the nature of the function performed by the body. Armory Comm'n of Alabama v. Staudt,388 So.2d 991, 993 (Ala. 1980)). In Tallaseehatchie Creek WatershedConservancy Dist. v. Allred, supra, we applied these factors to an entity with powers similar to those of ACIFA. The Legislature had organized the Tallaseehatchie *Page 967 
Creek Watershed Conservancy District ("Tallaseehatchie Creek") as a watershed conservancy district ("WCD"), pursuant to §9-8-50 et seq., Ala. Code 1975. As a WCD, Tallahassee Creek was authorized to act as an agent of the State. It enjoyed the customary governmental power of eminent domain; it was exempt from State and local taxation; and it benefited from legislative appropriations. See §§ 9-8-61(1), 9-8-61(7), and9-8-67. Despite these decidedly governmental characteristics, we held that Tallaseehatchie Creek, as a WCD, was an independent entity, and, thus, was not entitled to sovereign immunity.Tallaseehatchie Creek, 620 So.2d at 631.
This Court based its holding in that case on several key characteristics that distinguished WCDs as entities separate from the State. Those characteristics included the ability to: (1) sue and be sued; (2) enter into contracts; (3) sell and dispose of property; and (4) issue bonds. Id. at 630 (citing §§9-8-25(a)(13), 9-8-61(6), and 9-8-61(4) and (5)). Notably, the Legislature also had expressly provided that debts and obligations of a WCD were not the State's debts and obligations. Id. (citing § 9-8-61(3)). We found this final characteristic to be dispositive, stating:
 "This last provision clearly contemplates that WCDs are entities separate and apart from the State; the provision also introduces an element of ambiguity into the crucial question of the financial responsibility for any judgment adverse to a WCD."
Tallaseehatchie Creek, 620 So.2d at 630.
In the present case, ACIFA has these same qualities, qualities suggesting that it is an entity independent of the State. These qualities include: (1) the power to sue and be sued; (2) the power to enter into contracts; (3) the power to sell and dispose of property; (4) the power to issue bonds; and (5) exclusive responsibility for its financial obligations (the same quality that we found dispositive in Tallaseehatchie Creek). See
§§ 14-2-8(2), 14-2-8(5) through (7), 14-2-12, and 14-2-24.
ACIFA argues that, notwithstanding that it has those qualities, it is organizationally intertwined with the State by virtue of the State's oversight power regarding ACIFA's chief operating activity — prison construction. This oversight power, however, is not different from the power to direct operations that is commonly exercised by the owner of any ordinary business. In this case, the State's power to direct operations includes the power to approve prison-construction plans and the use of prison labor. ACIFA's relationship with the State does not persuade us to accept its argument.
Rather than looking to ACIFA's operations, we must look to its organizational and financial structure, as we did with the WCDs in Tallaseehatchie Creek. Accordingly, we conclude that ACIFA and, derivatively, its officials are not entitled to sovereign immunity.
 III.
Rodgers argues that the Legislature, by enacting what is now § 14-1-10, Ala. Code 1975, expressly consented to the filing of lawsuits against the Department of Corrections. That Code section reads in pertinent part:
 "In the performance [of the department's] functions and duties and in the exercise of such powers and authorities, the [department] and all . . . officers and employees of the [department] shall . . . be subject to all legal restrictions, limitations, conditions and penalties, civil and criminal, with respect to the performance of such functions and duties and the exercise of such powers and authorities."
We have carefully considered this argument. We conclude, however, that whether the Legislature intended to consent to the filing of such lawsuits is irrelevant, because, even if the Legislature intended to consent, it was powerless to do so *Page 968 
because of § 14 of the Constitution. This Court observed in Alabama State Docks v. Saxon, 631 So.2d 943 (Ala. 1994), that "[i]t is familiar law in this state that § 14 `wholly withdraws from the Legislature, or any other state authority, the power to give consent to a suit against the state.'" 631 So.2d at 946 (quotingDunn Constr. Co. v. State Bd. of Adjustment, 234 Ala. 372, 376,175 So. 383, 386 (1937)); see also Ex parte Cranman, [Ms. 1971903, Nov. 24, 1999] ___ So.2d ___ (Ala. 1999)* (discussing the difference between immunity in Federal law and immunity in our State law). Based on the law of immunity applicable in the present case, we conclude that only a constitutional amendment superseding § 14 can result in the consent that Rodgers claims to exist.
We recognize that there are situations in which the Legislature can validly consent to lawsuits against a governmental agency, such as where the immunity is, itself, derived from a statute, see, e.g., Weeks v. East Alabama Water, Sewer FireProtection Dist., 401 So.2d 26 (Ala. 1981) (where the defendant agency's immunity was derived from § 11-89-15, Ala. Code 1975); or where the defendant governmental agency is a county or municipality and the lawsuit would implicate a treasury other than the State's.See, e.g., Jackson v. City of Florence, 294 Ala. 592,320 So.2d 68 (1975) (involving a municipal corporation); and Lorencev. Hospital Bd. of Morgan County, 294 Ala. 614, 320 So.2d 631
(1975) (involving a county hospital board). The present case, however, is distinguishable from those cases because (1) the immunity involved in this case is derived from Art. I, § 14, of the Constitution, and (2) Rodgers's lawsuit seeks a judgment against the Department of Corrections, a judgment that would, if obtained, be paid from the treasury of the State rather than from the treasury of a county or municipal corporation or some other similarly situated governmental entity created by the Legislature. Accordingly, we conclude that the Department is entitled to sovereign immunity.
 IV.
Rodgers argues that he was entitled to "equitable relief" because he was seeking to compel Hopper and DeLoach[2] to perform their legal duties. By this argument, Rodgers attempts to invoke one of the well-recognized exceptions to the sovereign-immunity defense — the rule that § 14 does not apply to bar actions by which a plaintiff seeks "to compel State officials to perform their legal duties." DeStafney v. University ofAlabama, 413 So.2d 391, 393 (Ala. 1981). In this case, however, Rodgers cannot point to any breach by the defendants of a legal duty that is contemplated by this exception to § 14. We note that the "legal-duty" exception applies only where a law, a regulation, or a validly enacted internal rule commands a specific course of conduct. Cf. Stark v. Troy State Univ., 514 So.2d 46, 50 (Ala. 1987) ("[I]f the individual defendants have not acted toward the plaintiff in accordance with rules and regulations set by the university, their acts are arbitrary and an action seeking to compel them to perform their legal duties will not be barred by [§ 14 of the Constitution]"). Rodgers *Page 969 
does not cite any Department rule or regulation, or any act of the Legislature, that could serve as a basis for our holding this lawsuit against the individual defendants to be authorized by this exception. From what we can tell from his brief, he is arguing only that Hopper and DeLoach had a legal duty not to be negligent. We conclude that Hopper, DeLoach, and the parties who subsequently assumed Hopper and DeLoach's offices are entitled to § 14 immunity, including immunity against Rodgers's "equitable claim."
 V.
The claims against the Department of Corrections and the individual defendants serving in their official capacities on that institution's behalf are barred by § 14. As to those claims, the summary judgment is affirmed. Rodgers's claims against ACIFA and its vice president, however, are not barred by the doctrine of sovereign immunity; therefore, as to those claims, we reverse the judgment of the trial court, and we remand the case for a trial on those claims.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Hooper, C.J., and Houston, Cook, See, Brown, Johnstone, and England, JJ., concur.
Lyons, J., concurs in the result.
* Note from the reporter of decisions: The Supreme Court, on June 16, 2000, withdrew the Cranman opinion of November 24, 1999, and substituted another opinion. As of the date this opinion inRodgers v. Hopper was released for publication, the June 16, 2000, opinion in Cranman was pending on application for rehearing and had not been released for publication in the official reports.
[1] Rodgers's original pleadings named Brice Building Company ("Brice") as a defendant, but Brice had obtained a final summary judgment, from which Rodgers did not appeal. Furthermore, Rodgers initially pleaded an additional claim against each named defendant, seeking a recovery under 42 U.S.C. § 1983 for a violation of his Federal right to due process. This allegation allowed one of the defendants to remove the case to the United States District Court for the Northern District of Alabama. Rodgers, however, voluntarily dismissed the Federal due-process claim while this action was pending before that court; that court then remanded the case to the Montgomery Circuit Court.
[2] Rodgers sued Hopper and DeLoach in their official capacities; therefore, this lawsuit was, in effect, against their positions rather than against them personally. They argue that Rodgers's claims are now moot because Hopper and DeLoach no longer serve the State in the capacities alleged in the complaint. We disagree. Under Rule 25(d)(1), Ala.R.Civ.P., when a public officer, such as Hopper or DeLoach, becomes a party to a lawsuit and then "ceases to hold office, . . . the officer's successor is automatically substituted" in the action, and "any misnomer" thereafter occurring in the case "and not affecting the substantial rights of the parties" is to be disregarded.