MURDOCK, Justice.
The Alabama Corrections Institution Finance Authority (“ACIFA”) and its ex offi-cio vice president Kim Thomas[1] appeal from a judgment entered on a jury verdict awarding $5 million in compensatory damages to Albert Wilson, Donald Simmons, Rufus Barnes, Bryan Gavins, Joseph Dan-zey, and a class of current and former nonexempt correctional officers (“the correctional officers”) employed by the Alabama Department of Corrections (“ADOC”). We reverse the judgment of the Montgomery Circuit Court.

I. Facts and Procedural History

Section 14-2-2, Ala.Code 1975, states that the legislature created ACIFA
“as a public corporation for the purposes of acquiring land, constructing and leasing correctional’ institutions, buildings and facilities, disposing of the Kilby property by sale or lease and to vest such corporation with all powers, authority, rights, privileges and titles that may be necessary to enable it to accomplish such purpose.”
Rodney Blankenship, chief fiscal officér for ADOC, testified at trial in this case that “[b]y statute the Department of Corrections cannot incur debt. So this organization [ACIFA] wás set up as a separate public entity for financing, and [ADOC] passed property through so [ACIFA] could pledge it, and [ACIFA] passed the money back through and [ADOC] made payments on the debt.” Blankenship further explained that ADOC pays ACIFA rent for the prison facilities, which ACIFA then uses to pay the debt service on the bonds it issued to finance the construction of the prison facilities. Blankenship stated that he could not remember the last time ACI-FA issued bonds, but that it was probably at, least 10 years ago.
Section 14-2-6, Ala.Code 1975, provides that the governor is the president of ACI-FA, the commissioner of ADOC is the vice president, the State, finance director is the secretary,. and the-State treasurer is the custodian of the ACIFA’s funds but “shall not be a member .of the authority.” That section also provides that “[t]he members of the authority shall constitute all the members of the board of directors'of the authority, which shall be the governing body of the authority.”
*446 This -is the second time this case has come before this Court. In Ex parte Thomas, 110 So.3d 363 (Ala.2012), the Court explained:
“On August 17, 2010, Albert Wilson, Rufus Barnes, Joseph Danzey, Bryan Gavins, and Donald Simmons, all of whom are employed by ADOC as correctional officers (hereinafter referred to collectively as ‘the correctional officers’), sued ADOC and its then commissioner Richard Allen in the Barbour Circuit Court, alleging that ADOC was violating its own regulations and state law in the manner in which it: (1) compensated correctional officers for overtime; (2) restricted the way correctional officers were allowed to use earned leave; and (3) paid correctional officers the daily subsistence allowance provided by law. The plaintiffs also sought class certification on behalf of all other similarly situated correctional officers employed by ADOC and requested injunctive relief, as well as money damages, to include backpay with interest, punitive damages, and litigation costs and expenses, including attorney fees.
“On September 22, 2010, ADOC and Allen moved the trial court to dismiss the correctional officers’ claims for money damages, arguing that ADOC and Allen were entitled to State immunity under Article I, § 14, Ala. Const.1901. Before the trial court ruled on that motion, however, the correctional officers filed an amended complaint adding ACI-FA as a defendant and asserting claims against Allen in his capacity as vice president of ACIFA as well. On December 21, 2010, the trial court entered an order denying ADOC and Allen’s September 22 motion to dismiss, without stating its rationale.
“Thereafter, ADOC, ACIFA, and Allen filed an answer to the correctional officers’ amended complaint. On March 3, 2011, ADOC, ACIFA, and Thomas, who succeeded Allen as commissioner of ADOC and vice president of ACIFA on January 17, 2011, moved the trial court to transfer the action'to the Montgomery Circuit Court pursuant to § 6-3-9, Ala.Code 1975_On or about May 24, 2011, the Barbour Circuit Court granted the motion, and the case was'transferred to the Montgomery Circuit Court.
“The trial court thereafter approved class certification for the action, and, on April 17, 2012, ADOC, ACIFA, and Thomas moved the trial court to enter a partial summary judgment in their favor, arguing that the correctional officers’ claims seeking money ■ damages from ADOC were barred by the doctrine of State immunity and that the claims against ACIFA had no factual or legal basis. The correctional officers filed a response, arguing that the summary-judgment motion was without merit and that, in any event; the Barbour Circuit Court had already rejected the State-immunity argument before the case was transferred to the Montgomery Circuit Court. On May 17, 2012, the trial court conducted a hearing on the summary-judgment motion and, later that day, entered an order denying the motion without stating its rationale. ADOC, ACIFA, and Thomas now petition this Court for a writ of mandamus directing the trial court to vacate its order denying their summary-judgment motion and . to enter an order granting the same.”
110 So.3d at 364-65.
In Ex parte Thomas, this Court concluded that ADOC and Thomas in his official capacity as the commissioner ■ of ADOC were entitled to State immunity under § 14, Ala. Const.1901, and thus that the claims against them seeking money damages were due to be dismissed. The Court *447 denied mandamus relief to ACIFA and Thomas, in his capacity as vice president of ACIFA, which they sought following the trial court’s denial of their motion for a summary judgment. In that regard, the Court explained:
“ACIFA and Thomas have not argued that they are entitled to State immunity on the claims asserted against ACIFA and against Thomas in his capacity as vice president of ACIFA; rather, they argue that they are entitled to a summary judgment because ‘they have no connection whatsoever to the [correctional officers’] claims’ because ACIFA has no role in personnel or payroll matters affecting ADOC employees. They assert that ACIFA exists solely to facilitate the finance and acquisition of land, institutions, and facilities for ADOC, and they argue that the lack of any connection between the correctional officers’ claims and ACIFA effectively renders those claims nonjusticiable; therefore, review of the trial court’s denial of their summary-judgment motion on a petition for the writ of mandamus is available because, they argue, the issue of subject-matter jurisdiction has been raised. See University of South Alabama Med. Ctr. v. Mobile Infirmary Ass’n, 89 So.3d 735, 740-41 (Ala.2011) (stating that justi-ciability is jurisdictional), and Ex parte Flint Constr. Co., 775 So.2d 805 (Ala.2000) (holding that the question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus).
“We disagree, however, that a justicia-bility issue has been raised. ‘ “Concepts of justiciability have been developed to identify appropriate occasions for judicial action.... The central concepts often are elaborated into more specific categories of justiciability — advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions.” ’ Black’s Law Dictionary 943-44 (9th ed.2009) (quoting 13 Charles Alan Wright et al., Federal Practice & Procedure § 3529, at 278-79 (2d ed.1984)). ...
“In this case, however, ACIFA and Thomas are essentially arguing that the correctional officers’ claims against ACI-FA have- no basis because, they claim, ACIFA has nothing to do with the manner in which correctional officers are .compensated or the- funds with which they are compensated. This argument goes to the merits of the .correctional officers’ claims, and, regardless of whatever merit the argument might have, it does not raise a justiciability issue. The trial court’s denial of the.motion for a summary judgment as to ACIFA and Thomas in his capacity as vice president of ACIFA is accordingly not subject to mandamus review. See Ex parte Alabama State Bd. of Chiropractic Exam’rs, 11 So.3d 221, 226-27 (Ala.Civ.App.2007) (declining to address petitioners’ argument-that they were entitled to a writ of-mandamus on the ground that the plaintiffs’ claims had no merit). Thus, we review only ADOC and Thomas’s argument that the correctional officers’ claims against them for money damages are barred' by principles of State immunity.”
110 So.3d at 366. The Court remanded the action' to the trial court for litigation of the correctional officers’ claims against ACIFA and Thomas in his capacity as vice president of ACIFA. '
The correctional officers asserted claims of conversion, unjust enrichment, money had and réceived, work and labor done, and injunctive relief against ACIFA and Thomas in his capacity as the ex officio vice president of ACIFA. The claims stemmed from a decision by ADOC in October 2008 to change the shifts correctional officers worked at 7 ADOC prison *448 facilities from 8-hour shifts to 12-hour shifts.[2] The correctional officers alleged that the change resulted in their not being paid certain overtime wages they say were due to them.
At the conclusion of - the trial of -the correctional officers’ claims against ACI-FA and Thomas, ACIFA and Thomas moved for a judgment as a matter of law on the ground that there was no evidence of a- connection between ACIFA and the payment of the correctional officers’ wages. The trial court reserved ruling on the motion until after the close of all the evidence. Following the presentation of witnesses by ACIFA and Thomas, ACIFA and Thomas, renewed their motion for a judgment as a matter of law. -The trial court denied the motion, explaining:
“After listening to all the evidence, I am satisfied the controversy does not exist any more. I think the last witness made it perfectly clear that all of this has been done perfectly legal. If you had gone to the Personnel Department to seek that information, we might not .have spent this considerable amount of time. I respect that your clients, have misunderstood the process [regarding calculation of their compensation] and now, after listening to this last , witness from the Personnel Board, the reason they misunderstood it, it is apparently clear that these time sheets don’t show this, and it is the Personnel Board that completes the payroll, and that’s where the information lies. So I can underr stand their confusion and, indeed, your confusion.
“The very arguments that you just made for ACIFA, yes, they are a legal suable entity. But the very arguments that you just made tying them to the Department of Corrections, if you were ever ultimately to win anything, will result in the Supreme Court throwing out any verdict because they will say that ACIFA and the Department of Corrections are both protected by immunity. That’s going to happen.
“[Counsel for correctional officers]: Well, I have the right to have that happen to me, Your Honor.
“THE COURT: You certainly do, and I am going to give you that right. I don’t think you have met your burden of proof, but we have been through three days of testimony. We have got a jury here, and I am going to let them render some verdict. That’s exactly right.”
(Emphasis added.)
The jury returned a verdict of $5 million in compensatory damages against ACIFA and Thomas and in favor of the correctional officers. Following the entry of the verdict, ACIFA and Thomas filed a Rule 50(b), Ala. R. Civ. P., motion in which they argued extensively that they were entitled to a judgment as a matter of law because, they said, the evidence demonstrated that ACIFA had nothing to do with the personnel ancl payroll policies giving rise to the correctional officers’, claims. ACIFA and Thomas concluded the motion by stating: “Accordingly, ACIFA respectfully requests this Court enter a judgment in its favor as to immunity or as to the foregoing arguments made in this brief.’’ The trial court denied the motion.
. ACIFA and Thomas appeal the trial court’s denial of the motions for a judgment as a matter of law and the judgment entered on the jury’s verdict.

*449
II. Standard of Revieio

“ “When reviewing a ruling on a motion' for a JML [judgment as a matter of law], this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). For actions filed after June 11,1987, the nonmovant must present “substantial evidence” in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmov-ant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).’ ”
Lafarge N. Am., Inc. v. Nord, 86 So.3d 326, 332 (Ala.2011) (quoting Delchamps, Inc. v. Bryant, 738 So.2d 824, 830-31 (Ala.1999)).

III. Analysis

ACIFA and Thomas first contend that ACIFA should be entitled to sovereign immunity and thus that the correctional officers’ action against them should have been dismissed. To make this argument, ACIFA and Thomas understand that they must overcome this Court’s decision in Rodgers v. Hopper, 768 So.2d 963 (Ala.2000), which they ask this Court to overrule. Rodgers concerned a correctional officer at St, Clair Correctional Facility who- had been stabbed by an inmate at the facility. The correctional officer sued ADOC, ADOC’s commissioner, ACIFA, ACIFA’s vice present (the commissioner of ADOC), and the warden of the facility. The Rodgers Court concluded that ADOC, ADOC’s commissioner, and the warden of the facility were entitled to sovereign immunity. After a lengthy analysis, however, the Rodgers Court concluded that ACI-FA and its officers were not entitled to sovereign immunity because ACIFA was not a governmental agency for purposes of sovereign immunity. See Rodgers, 768 So.2d at 966-67.
■ We deem it unnecessary in this case, however, to evaluate the constitutional question whether ACIFA is entitled to sovereign immunity because the correctional officers failed to establish any connection between ACIFA and the manner in which correctional officers are compensated ■ or the funds with which they are compensated. This failure to prove any connection between ACIFA and the harm allegedly suffered by the correctional officers means that regardless of whether ACIFA- ultimately has or ■ does not have sovereign immunity, ACIFA and Thomas should have been granted a judgment as a matter of law.
To begin with, there is no dispute that ADOC, not ACIFA, sets the personnel policies, including the duration and structure of the shifts worked by. correctional officers that underlie the correctional officers’ claims in .this case. Stephen Brown, associate commissioner for administration of *450 ADOC, testified that former ADOC Commissioner Richard Alen asked him to study the issue of what could be done to help ADOC cover its staffing shortage and that the most feasible solution of those examined was the challenged shift change. Specifically, after a six-month study, Alen made the decision to require all ADOC prison facilities to be staffed through 12-hour shifts rather than 8-hour shifts. Thomas testified that when he became ADOC commissioner he determined it was in ADOC’s best interest to retain the 12-hour shifts and that he did not foresee that changing. There was no testimony, evidence, or argument at trial suggesting that ACIFA had anything to do with the shift-change decision.
The evidence introduced by the correctional officers in support of their position that “ACIFA is intermingled within the ADOC” fell into three categories. First, the correctional officers noted that the officers of ACIFA are State officials. Specifically, as noted in the rendition of the facts, by statute ACIFA’s officers and board membership consist of the governor as president, the commissioner of ADOC as vice president, and the State finance director as secretary. Additionally, the State treasurer is the custodian of ACI-FA’s funds.
The mere fact that the commissioner of ADOC is also ex officio the vice president of ACIFA or that the State finance director is also the secretary of ACIFA does not establish that ACIFA has anything to do with correctional officers’ pay. It simply establishes that those State officials have multiple responsibilities. Both Thomas and Brown testified that former ADOC Commissioner Allen made the decision to change correctional officers’ shifts from 8 hours to 12 hours in his capacity as ADOC commissioner. Thomas testified that he made the decision to maintain the shift change in his capacity as ADOC commissioner. There was no evidence presented that the ADOC commissioners made these decisions on behalf of ACIFA. Likewise, testimony established that the Department of Finance is involved with how correctional officers are paid, but there was no evidence indicating that ACI-FA had any connection to this responsibility of the Department of Finance.
Uncontradicted testimony from multiple witnesses affirmed that the roles of the ADOC commissioner and the State finance director as officers and members of ACI-FA did not translate to ACIFA’s having any involvement in the manner in which correctional officers are paid. Sandra Collins, who is responsible for managing and directing the payroll activities and payroll-reconciliation processes for the State in her capacity as State payroll administrator in the comptroller’s office, which is a part of the Department of Finance, testified:
“Q. Does [the Department of Finance] have any connection whatsoever with ACIFA?
“A. No.
[[Image here]]
“Q. Have you ever made any payment on behalf of [ACIFA] from the Comptroller’s Office?
“A. No.
“Q. To your knowledge, has there ever been any payments made on their behalf?
“A. Not to my knowledge.”
Kelly Butler, assistant State budget officer in the Department of Finance, testified:
“Q. Does [ACIFA] receive any funding from the State of Aabama?
“A. No, sir, it does not.
“Q. To your knowledge, does it have any employees?
“A. No, to my knowledge, it does not.
*451 “Q. Do you know if it gets any State funds, to your knowledge?
“A. The only funds that it receives, to my knowledge, are rental income from the Department of Corrections in order to pay the debt service.
“Q. Do you know whether or not it has any connection whatsoever with the payment of the wages of correctional officers?
“A. It is not involved in the payment of wages.
[[Image here]]
“Q. Have you ever received a budget request from ACIFA?
“A. To my knowledge, we have not. ACIFA is not a budgeted agency.”
ADOC Commissioner Thomas testified:
“Q. Do you have any knowledge as to any connection, commingling, or anything that ACIFA has to do with the day-to-day functions, essentially the payment of correctional officers, that ACI-FA has anything to do with that?
“A. No, sir. ACIFA does not have any dealings whatsoever in the day-to-day operations of our prison system, the facility, or the compensation of any employees, including correctional officers.
“Q. Now, the Department every year goes to the Legislature through the Governor with a submission of a budget. Is that correct?
“A. Yes, sir.
“Q. And does that budget include compensation for wages for the correctional staff?
“A. It does.
“Q. And if granted the budget, under the budget the amount[s] granted go towards that compensation on behalf of the Alabama Department of Corrections?
“A. Yes. A portion of that total budget dollars is spent towards compensating employees, yes.”
ADOC Associate Commissioner for Administration Brown testified that ACIFA has nothing to do with ADOC’s budget, including correctional officers’ pay.
“Q. There has been allegations that ACIFA has some intermingling or commingling or connection with ADOC in the payment of correctional officers’ wages. Is that true?
“A. No.
“Q. Does ACIFA have anything to do—
“A. No, our funds don’t go through ACIFA.
“Q. Sir?
“A. Our funds do not go through ACI-FA.
“Q. Do they come from ACIFA?
“A. No. There is no association of ACI-FA on any of our general operating funds.
“Q. Is part of your responsibility to work up yearly budgets for [ADOC]?
“A. Yes. The accounting/finance guys report to me.
“Q. Is ACIFA ever considered in working up that budget?
“A. I have been with [ADOC] seven years. I have never done anything with ACIFA”
ADOC Chief Fiscal Officer Blankenship confirmed Brown’s testimony on the matter:
“Q. Does ACIFA, other than that, have anything to do with the day-to-day functions of [ADOC]?
“A. No, sir. It has no employees. It has nothing to do other than provide financing. That’s it.
*452 “Q. There has- been testimony that ACIFA is commingling with ADOC.''Is that true?
“A. No, sir. We pay the payments on their behalf. We passed land .titles through. But, no, sir. There is no money for ACIFA unless we give them the money to make the payment for the debt.
“Q. Do they have any connection whatsoever with the payment of wages to the correctional officers?
“A. No, sir.”
State payroll auditor Sherry Grable testified that when ADOC was implementing the shift change, there were meetings between Representatives of ADOC, .the Department of Finance, and the Personnel Department but that no representatives of ACIFA were in those meetings.
Additionally, some of these same witnesses explained the specific steps that are taken for ensuring that correctional officers are paid for the work they perform. The accounts of those witnesses did not indicate that ACIFA has any involvement with how .correctional officers are paid. For example, Grable explained the pay process as follows:
“A. Well, I am not sure exactly how the documentation — I don’t know if [a correctional officer] use[s] a swipe badge to indicate that he has come to work and when he leaves or if he uses a fingerprint. I know they have some type of electronic method. Those methods create a time sheet based on you signing in through a time clock of some sort. This KRONOS system is the time-keeping system that records those automated entries of coming and going. Then the employee signs off on those by the pay period. Any leave is also requested through that time-keeping system. It is approved by the employee and then it is approved by the manager, supervisor. Then it is uploaded into the payroll personnel system — GHRS.
“Q. ■ By whom is it uploaded?
“A. There is an electronic file created. It extracts the data from the time sheets. Now, I believe you have to have a payroll clerk to go in and look to see whoever is signed off on that time sheet, because you have to account — a. full-time employee is a 40-hour workweek, so you have to account for the time.
“Q. ■ Then what happens?
“A. The time is submitted into GHRS electronically. We pull a file on a certain night. Then we take the pay rate that is stored in the personnel system, and we associate it with the hours submitted for -the employee and create a paycheck.”
Brown described the process as a collaboration between ADOC and the comptroller’s office:
“A.[T]he process of paying people for their shift work is done by the comptroller. We track the time, supply those hours to the comptroller, and they pay them. Based on their system, we had to come up with a way to make sure whatever hours they were working translated into the proper pay.”' ■
The correctional officers offered no evidence contradicting the manner in which their pay is determined and distributed.
When the correctional officers were asked what connection existed between ACIFA and their pay, they could not provide a specific answer. Instead, they noted that some .of.ADOC’s administrative regulations cite § 14-2-8, Ala.-Code 1975, as part of their statutory authority.[3] Sec *453 tion 14-2-8 codifies the general- powers of ACIFA; it provides:
“[ACIFA] shall have the following powers' among others specified in this chapter:
“(1) To have succession in its corporate name until the principal of and interest on all bonds issued by it' shall have been fully paid and until it shall have been dissolved as provided in this chapter; , •
“(2) To maintain -actions and have actions maintained against it and to prosecute and defend in any court having jurisdiction of the subject matter and of the parties thereof;
“(3) To have arid to use a corporate seal and 'to alter such seal at pleasure;
“(4) To establish a fiscal year;
“(5) To acquire and hold title to real and personal property and to sell, convey, mortgage, or lease the same as provided in this chapter;
“(6) To provide for the acquisition, construction, reconstruction, alteration, and improvement of facilities and for the procurement of sites and equipment for such facilities and for the lease thereof;
“(7) To lease facilities to the state, the department, and any other agency or instrumentality of the state;
“(8) To anticipate by the issuance of its bonds as limited in this chapter the receipt of the rent--and revenues from such facilities ...;
“(9)' As security for the payment of the principal óf and interest on its bonds, to enter into any lawful covenant, to grant mortgages upon and security interests in its facilities and to pledge the rents and revenues from such facili•ties.'..;
“(10) To invest as provided in this chapter the proceeds from the sale of its bonds pending need therefor; and
“(11) To appoint and employ such attorneys, agents, and employees as the business of the authority may require, subject to the Merit System where applicable.”
Alabama Admin. Code (ADOC), Regulation 226, concerning the issuance of a “Weapons Card,” lists § 14-2-8 under the subheading “Performance” at the end of the regulation. Alabama Admin.' Code (ADOC), Regulation 229, concerning “Pre-Employment Assessrnent Screening for *454 Correctional Officer Candidates,” and Regulation 217, concerning the “Dress Code” for employees, also list § 14-2-8 under the subheading “Performance” at the end of the regulations. Additionally, Ala. Admin. Code (ADOC), Regulation 332, addressing the “Security Threat Group Intelligence Program,” and Regulation 340, concerning responsibilities for “Inmate Counts,” list Title 14, in which § 14-2-8 is located, under the subheading “Performance” at the end of those regulations. Aside from the general administrative regulations applicable to ADOC, Easterling Correctional Facility’s Standard Operating Procedure (“SOP”) 217-01, concerning “Employee Haircuts and Shoeshines,” lists § 14-2-8 under the subheading “Performance” at the end of the SOP.[4]
Both Thomas and Brown testified that the administrative regulations that list § 14-2-8 as statutory authority are simply mistakes that need to be corrected in those regulations because ACIFA has nothing to do with the administration of ADOC’s facilities. The correctional officers strongly hint that that testimony was a convenient excuse and that the regulations demonstrate that ACIFA is involved with regulating the conduct of ADOC employees.
Even if the listing of § 14-2-8 and Title 14 in the regulations is not a genuine mistake, a plain reading of the regulations and § 14-2-8 reveals that the listings do not establish that ACIFA is involved with supervising correctional officers, let alone establish a connection between ACIFA and the correctional officers’ pay. For example, in Regulation 226 there is no explanation as to how ACIFA has anything to do with issuing weapons cards for ADOC employees, and § 14-2-8 does not address the subject. Likewise, nothing in Regulation 229 explains how ACIFA has anything to do with ADOC’s carrying out its responsibility to pre-screen candidates for employment as corrections officers, nor does § 14-2-8 shed light on the subject. The same can be said for Regulation 217 concerning the dress code for employees and SOP 217-01 concerning employee haircuts and shoeshines.
As for Regulations 332 and 340, it is unsurprising that they would list Title 14 as statutory authority because Title 14 is titled “Criminal Correctional and Detention Facilities,” and it contains all the statutes pertaining to ADOC, its facilities, and other prison facilities, in addition to the specific sections that create and govern ACIFA. Moreover, the subheading in Regulation 340 for “Responsibilities” regarding inmate counts lists the warden, staff members, shift commanders, and correctional officers as persons who are responsible for performing inmate counts or making sure that such counts are performed. It makes no mention of ACIFA having any responsibility for inmate counts.
Overall, § 14-2-8 does not say anything about any of the matters addressed in the regulations cited, and the regulations themselves do not discuss ACIFA in their text as having any responsibility for the areas dealt with by the respective regulations. In other words, the citations in those regulations to § 14-2-8 or to Title 14 in general do not explain how ACIFA is in any way responsible for supervising correctional officers, determining how correctional officers are paid, or ensuring that they are paid, and the correctional officers provided no explanation at trial nor do they do so on appeal. Instead, they sim *455 ply rely upon the citations contained in the subject regulations as sufficient to establish a connection. As we have explained, the regulations do no such thing. .
The regulation in the Alabama Administrative Code that addresses overtime work and pay for correctional officers, Regulation 212, does not list § 14-2-8 or Title 14 in general as authority for the regulation.[5] Moreover, under the heading of ‘-Responsibilities,” Regulation 212 states that “[t]he Commissioner [of ADOC] shall ensure departmental compliance with federal and state regulations and authorize monetary payment for overtime work.” It also states: “The ADOC Finance/Accounting Division is responsible for auditing attendance records, shift logs, leave slips, computer printouts, and overtime/compensatory time authorization records for accuracy and compliance with federal and state regulations.” Thus, the very regulation the corrections officers contend ACIFA violated makes no mention of ACIFA’s having any responsibility for how overtime is accounted for and how it is paid to ADOC employees.[6] ■
The foregoing arguments constitute the entirety of the correctional officers’ evidence of ACIFA’s role in personnel or payroll matters affecting ADOC employees. Suffice to say, they failed to present substantial evidence of a connection between ACIFA and the supervision of the correctional' officers or how the correctional officers are paid. Without evidence indicating that ACIFA had anything to do with the personnel policies at issue or how correctional officers’ pay is determined and distributed or the funds that are used to pay correctional officers, ACIFA cannot be held liable for the, harms the correctional officers allege they suffered. Because of the lack of substantial evidence in support of the claims made by the correctional officers against ACIFA and against Thomas as ex officio vice president of ACIFA, the defendants were entitled to a judgment as a matter of law on those claims.

IV:- Conclusion

Based on the foregoing, the judgment in favor of the correctional officers is reversed, and the cause is remanded to the trial court to enter a judgment in favor of ACIFA and Thomas.
REVERSED AND REMANDED.
MOORE,-C.J., and-BOLIN and MAIN, JJ., concur.
BRYAN, J., concurs in the result. •

. While this appeal was pending, Jefferson S. Dunn, on April i, 2015, succeeded Thomas as commissioner of the Alabama Department of •Corrections and thus as ex officio vice president of ACIFA. He was automatically substituted as an appellant. See Rulé 43(b), Ala. R.App. P. We have not restyled the appeal to reflect that substitution.

. Bibb County Correctional Facility was already operating on 12-hours shifts at that time.

. ACIFA and Thomas have .filed a motion to strike documents attached as an appendix to *453 the correctional officers’ brief, which include copies of ADOC regulations, and a motion to supplement the record. ACIFA and Thomas argue that several documents in the appendix are not reproductions of statutes, rules, or regulations under Rule 28(h), Ala. R.App. P., and that the copies of the regulations in the appendix are not the ones used as trial exhibits. They argue that the documents should be stricken. As part of their motion to supplement the record; ACIFA and Thomas attached to their motion copies of exhibits contained in the record that relate some of the same information contained in documents submitted in the correctional officers’ appendix, and they ask that the record copies be substituted for the correctional officers’ copies. The correctional officers did not file a response to ACI-FA and Thomas's motions.
Rule 28(h), Ala. R.App. P., states: "If determination of the issues presented requires the study of statutes, rules, regulations, etc., or relevant parts thereof, they shall be reproduced in the brief or in an addendum at the end, or they may be supplied to the court in pamphlet form.” Rule 28(h) does not require that copies of statutes, rules, or regulations must be copies from exhibits in the record; Therefore, we see no need to strike those documents from the correctional officers' appendix or to grant the motion to supplement the record on that basis. ACIFA and Thomas are correct that.some documents contained in the correctional officers’ appendix are not simply reproductions of statutes, rules, or regulations, and some of the documents are not contained in the record. Those documents are due to be stricken and have not been considered in oúr disposition of' this case.

. Four of the regulations discussed — 226, 229, 332, and 340 — apparently are no longer included in ADOC’s Administrative Code, although they were presented to the trial court and are discussed in the record.

. Regulation 212 lists as authorities the Fair Labor Standards Act, 29 U.S.C. § 201; Ala. Code 1975, §§ 36-21-4, 36-21-5, and 36-21-6; Ala. Admin. Code (State Pers. Bd.), Regulation 670-X-l 1-07(1), (2), (3), and (4); the State Personnel Procedures Manual; ADOC Personnel Division Manual; and Christensen v. Harris Cnty., 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).

. The only other way the correctional officers seek to connect ACIFA with supervision of the correctional officers is through the fact that some of the statutes addressing ACIFA mention the term “prison labor.” As we have noted, ACIFA's primary purpose is to fund the construction of prison facilities. See § 14-2-2, Ala.Code 1975. The definition provided in § 14 — 2—1(6) for the term "Facilities” is as follows:
"c. Any facilities necessary or useful in connection with prisons, buildings or enclosures, including, without limiting the generality of the foregoing, hospitals, offices, correctional officers' quarters and residences, warehouses, garages, storage facilities, abattoirs, cold storage plants, canning plants, laundries and manufacturing plants for the employment of prison labor."
§ 14-2-l(6)c„ Ala.Code 1975 (emphasis added). In the context presented, however, the emphasized passage clearly refers to prison-inmate labor.